# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IORA P.[1], <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 18 C 3640 <br><br> Magistrate Judge Mary Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Iora P. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On January 7, 2014, Plaintiff applied for DIB, alleging that she became disabled on May 31, 2012 due to multiple sclerosis, glaucoma, depression, and anxiety. (R. at 161–67). Her claims were denied initially on July 12, 2014, and upon

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

reconsideration on July 10, 2015, after which Plaintiff requested a hearing. (*Id.* at 63–71, 73–84, 97–98). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on November 1, 2016. (*Id.* at 30–61). The ALJ also heard testimony from Jill Radke, a vocational expert (VE). (*Id.* at 56–61).

The ALJ issued an unfavorable decision on April 5, 2017. (R. at 12–29). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since May 31, 2012, her alleged disability onset date. (*Id.* at 17). At step two, the ALJ found that Plaintiff's multiple sclerosis and glaucoma were severe impairments. (*Id.*). The ALJ also concluded that Plaintiff's hypertension, obesity, depression, and anxiety were non-severe impairments. (*Id.* at 17–18). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 19).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §§404.1567(b) except with the following limitations:

> she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The claimant can never climb ladders, ropes, or scaffolds. She can frequently handle and finger on the left. The claimant cannot perform work involving far acuity. She is limited to no more than frequent exposure to extreme cold or heat, and must avoid all exposure to hazards.

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

2

(R. at 20). Moving to step four, the ALJ determined that Plaintiff could perform her past relevant work as a senior financial advisor. (*Id.* at 23). Since the ALJ found that Plaintiff could perform past relevant work, he did not need to proceed to step five. Accordingly, the ALJ concluded that Plaintiff was not under a disability from her alleged disability onset date, May 31, 2012, through the date of the ALJ's decision. (*Id.* at 15).

On March 22, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's arguments that the ALJ erred in failing to properly account for Plaintiff's mental impairments.[3]

---

[3] Because the Court remands on this basis, it does not address Plaintiff's other arguments at this time.

4

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2[4] ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

At step two, the ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety were non-severe but nonetheless caused

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

mild limitations in 1) understanding, remembering or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. (R. at 18–19).[5] Despite noting these limitations, the ALJ did not include any non-exertional limitations in the RFC assessment. (*Id.* at 20–23). Nor did the ALJ explain his rationale for not including non-exertional limitations in the RFC. Such an explanation is necessary for judicial review, as without it, the Court cannot follow the ALJ's reasoning. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (remanding when the ALJ's RFC analysis failed to account for mild mental limitations); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (same).

Although a mild limitation in an area of mental functioning does not necessarily "prevent an individual from functioning 'satisfactorily,'" *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (citation omitted), the ALJ is still required to analyze the limitations in light of Plaintiff's other impairments when determining the RFC. *See Denton v. Astrue,* 596 F.3d 419, 423 (7th Cir.2010) ( "A failure to fully consider the impact of non-severe impairments requires reversal."); *see also Villano*, 556 F.3d at 563 ("the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe"); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that

---

[5] Effective January 17, 2017, the Agency revised the medical criteria for evaluating mental disorders and changed the requirements of listing for mental impairments. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). The Agency expects that federal courts will review its "final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 & n. 1. Because the ALJ issued his decision on April 5, 2017, the Court will use these revised medical criteria in its review of the ALJ's decision.

6

one or more of [claimant's] impairments was "severe," the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments–including those impairments that in isolation are not severe."); 20 C.F.R. § 404.1523 (the combined impact of the impairments must be "considered throughout the disability determination process."); *Simon-Leveque v. Colvin*, 229 F.Supp. 3d 778, 787–88 (N.D. Ill January 17, 2017) (remanding when ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) (same). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning." *Muzzarelli v. Astrue,* No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005)). The ALJ did not do so here.

Nowhere in the ALJ's RFC assessment or corresponding explanation does the ALJ address the mild mental limitations discussed at step two. SSR 96-8p specifies that mental limitations determined at step two under the "paragraph B and C" criteria cannot stand in for an RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments...."). The ALJ acknowledged this at the end of his step two finding, stating:

7

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental listings in 12.00 of the Listing of Impairment (SSR 96-8p).

But the ALJ never gave a more detailed assessment in his step four and five analysis. At the end of his step-two analysis, the ALJ simply stated: "[T]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. at 19).

"Courts have remanded cases where an ALJ relied on language identical to that used at the end of Step 2 in this case because it fails to clarify the degree to which the RFC expresses the functional limitations found under the special technique." *Muzzarelli*, 2011 WL 5873793, at *23 ("It is unclear what the ALJ meant by saying that the RFC 'reflects' his Step 2 findings concerning [the claimant's] mild impairments."); *see also Alesia*, 789 F. Supp. 2d at 933 (remanding when an ALJ used the same language at the end of step two, noting: "But [this language] was not enough, because the combined impact of the impairments must be considered throughout the disability determination process." (citations and internal quotation marks omitted)). Here, remand is required "because the ALJ failed to explain how his Step 2 discussion of [Plaintiff's] restrictions in [understanding, remembering or applying information; interacting with others; concentration, persistence or pace; and adapting or managing oneself] are 'reflected'

8

in the RFC itself." *Muzzarelli*, 2011 WL 5873793, at *23; s*ee also Alesia v. Colvin*, No. 12 C 8395, 2015 WL 5062812, at *7 (N.D. Ill. Aug. 26, 2015) ("[T]he non-severity of [claimant's] depression cannot, on its own, supply the premise for the ALJ's conclusion that the "evidence does not support any further limitations to the claimant's work-related activities.").

This error is particularly problematic here, as the VE found that the ALJ's RFC would permit Plaintiff to perform her past skilled position as a senior financial advisor. (R. 23). The *Dictionary of Occupational Titles* defines an investment analyst (financial) as follows:

> Analyzes financial information to forecast business, industry, and economic conditions, for use in making investment decisions: Gathers and analyzes company financial statements, industry, regulatory and economic information, and financial periodicals and newspapers. Interprets data concerning price, yield, stability, and future trends of investments. Summarizes data describing current and long term trends in investment risks and economic influences pertinent to investments. Draws charts and graphs to illustrate reports, using computer. Recommends investment timing and buy-and-sell orders to company or to staff of investment establishment for advising clients. May call brokers and purchase investments for company, according to company policy. May recommend modifications to management's investment policy. May specialize in specific investment area, such as bond, commodity, equity, currency, or portfolio management.

*DOT* 160.267-026. The Specific Vocational Preparation ("SVP") for this position is listed as an 8, which requires a person to be trained for over four years and up to ten years to perform the position. (*Id.*). The job responsibilities of a senior financial advisor, as described in the DOT, are of sufficient complexity that even mild mental limitations could impact a person's ability to perform this skilled position. *Alesia*, 789 F. Supp. 2d at 933–34 ("Because the ALJ did not include any mental functioning

9

restrictions in his RFC finding, Claimant's mental functioning limitations could not be taken into account in the step-four finding. As a result, the ALJ never considered whether Claimant's mental impairments affected her ability to perform her past relevant work, which was skilled in nature."). But the ALJ made no discussion of mental impairments in the RFC analysis, nor did he provide any appropriate hypothetical to the VE regarding mental limitations. Without any such analysis, neither the ALJ nor this Court can determine whether Plaintiff is in fact capable of performing her past relevant work as a financial analyst. Accordingly, the ALJ did not "build an accurate and logical bridge from the evidence to [his] conclusion," *Steele*, 290 F.3d at 941, preventing the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *Scott*, 297 F.3d at 595.

This error requires remand. *See Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (the ALJ's failure to account for claimant's mild limitations in mental functioning in the RFC necessitated remand); *Alesia*, 789 F. Supp. 2d at 933–34 (same). On remand, the ALJ shall reevaluate Plaintiff's RFC, considering all of the evidence of the record, including the combined impact of her severe and non-severe limitations, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether Plaintiff can perform her past relevant work, or if there are jobs that exist in significant numbers that Plaintiff can perform.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [14] is **GRANTED**, and the Commissioner's motion for summary judgment [18] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: March 11, 2019

MARY M. ROWLAND
United States Magistrate Judge